IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| THE DEL-NAT TIRE CORPORATION, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) No. 2:09-cv-02457-JPM-tmp |
| | ) |
| A TO Z TIRE & BATTERY, INC., | ) |
| | ) |
|     Defendant. | ) |

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

Before the Court is Plaintiff The Del-Nat Tire Corporation's Motion for Summary Judgment (Docket Entry ("D.E.") 26), filed February 19, 2010.  Defendant A to Z Tire & Battery, Inc. filed a response in opposition on March 22, 2010.  (D.E. 28.)  Plaintiff filed a reply in support of its motion on March 26, 2010.  (D.E. 31.)  The Court held a telephonic hearing on the motion on April 6, 2010.  With leave of Court, Plaintiff filed a supplemental affidavit on April 7, 2010 (D.E. 43) and Defendant filed a supplemental response to Plaintiff's motion on April 12, 2010 (D.E. 44).  For the following reasons, Plaintiff's motion is GRANTED in part and DENIED in part.

**I.    Background**

Plaintiff The Del-Nat Tire Corporation ("Plaintiff" or "Del-Nat") is a Nevada-domiciled corporation in the business of selling vehicle tires to independent tire dealerships.  (Pl.'s

1

Statement of Material Facts in Supp. of Mot. for Summ. J. ("Pl.'s Statement of Facts") (D.E. 26-2) ¶¶ 1 & 2.)  Defendant A to Z Tire & Battery, Inc. ("Defendant") is an independent tire dealership domiciled in Texas.  (Id. ¶ 3.)  Plaintiff and Defendant did business with each other from 1990 until May 15, 2009 and Defendant was a shareholder of Plaintiff.  (Def.'s Mem. in Supp. of Resp. to Mot. for Summ. J. ("Def.'s Mem.") (D.E. 28-3) at 2; Nussbaum Aff. ¶ 6.)

As part of their business relationship, Plaintiff issued approximately thirteen debentures[1] to Defendant in exchange for startup and maintenance capital.  (Pl.'s Statement of Facts ¶ 15; Def.'s Resp. to Pl.'s Statement of Facts (D.E. 28-1) ¶ 15; see also Pl.'s Mot. for Summ. J. Ex. A ("Debenture Certificates") (D.E. 26-3).)  In addition, Defendant invested in Del-Nat Ventures, LLC ("Del-Nat Ventures"), a Tennessee limited liability company jointly owned by Plaintiff's current and former shareholders.[2]

---

[1]  "A debenture is a long-term unsecured debt security that is issued . . . to a large number of investors in order to raise capital." In re ICH Corp., 230 B.R. 88, 90 n.3 (N.D. Tex. 1999) (citing Broad v. Rockwell Int'l Corp., 642 F.2d 929, 940-42 (5th Cir. 1981)); see also Black's Law Dictionary 460 (9th ed. 2009) (defining debenture as "[a] bond that is backed only by the general credit and financial reputation of the corporate issuer, not by a lien on corporate assets.").

[2]  According to Defendant, Plaintiff was "experiencing financial difficulties" in or around the beginning of 2005. (Nussbaum Aff. ¶ 20.)  In an attempt to relieve these financial difficulties, the shareholders of Plaintiff, including Defendant, formed Del-Nat Ventures. (Id.)  The purpose of forming Del-Nat Ventures was to purchase Plaintiff's Memphis warehouse, thereby relieving Plaintiff of a significant financial liability. (Id.)  After Del-Nat Ventures purchased the warehouse, it leased the warehouse back to Plaintiff so that it could continue business operations. (Id.)

From December 2008 to May 2009, Defendant placed several purchase orders with Plaintiff for the acquisition of vehicle tires. (Pl.'s Statement of Facts ¶ 4.) According to Plaintiff, Defendant accepted delivery of certain goods and rejected delivery of other goods. (Id. ¶¶ 6 & 11.) Based on the amount of goods accepted by Defendant, expenses incurred as a result of Defendant's alleged repudiation, and certain credits that were applied to Defendant's account, Plaintiff contends that Defendant owes it $1,944,688.58 plus interest. (Id. ¶¶ 9, 12-13; Nieman Aff. (D.E. 43-1) ¶ 13.) Plaintiff asserts that it has made a demand to Defendant for payment for the amounts owed and that Defendant has refused to tender payment. (Pl.'s Statement of Facts ¶ 10.)

On June 12, 2009, Plaintiff filed a complaint in the Chancery Court of Shelby County, Tennessee which Defendant removed to this Court on July 14, 2009. (See generally Notice of Removal (D.E. 1) 1.) Plaintiff's complaint alleges that Defendant is in breach of contract and seeks money damages for the balance owed under the purchase orders. (Id. Ex. A ("Compl.") ¶¶ 19-22.)

Although the exact amount of the balance owed is in dispute, Defendant's counsel conceded at the hearing that Defendant owes an outstanding balance to Plaintiff. Defendant asserts, however, that it is entitled to an offset of the

balance owed, contending that: (1) Defendant should be able to offset any recovery by the amount Plaintiff owes Defendant under the debentures Plaintiff issued to Defendant, and (2) Defendant should be able to offset any recovery by the amount Defendant has invested in Del-Nat Ventures.  (Answer (D.E. 3) ¶ 23; Def.'s Resp. to Pl.'s Statement of Facts ¶ 19.)

## II.  Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989).  In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion."  Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see also Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998).  A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.

**III. Analysis**

In its Motion for Summary Judgment, Plaintiff asserts that (1) Defendant is not entitled to offset any amount it owes to Plaintiff based on the debentures Defendant holds, (2) Defendant is not entitled to offset any amount it owes to Plaintiff based on Defendant's ownership interest in Del-Nat Ventures, and (3) Defendant is entitled to judgment as a matter of law regarding its breach of contract claim.  The Court will address each contention in turn.

**(A)  Offset based upon debentures Defendant holds**

It is undisputed that from 1990 to 2008, Plaintiff issued approximately thirteen debentures to Defendant.  (Def.'s Resp.

to Pl.'s Statement of Facts ¶ 15.)  Each debenture contains an identical "Redemption Provision."[3]  (See generally Debenture Certificates.)  Under the Redemption Provision, Plaintiff has the sole option to redeem the debentures prior to their maturity dates.  (Id.)  The Redemption Provision, however, contains the following qualifying language: "In the event that less than all of the Debentures of this issue are to be redeemed, redemption will be, to the extent possible, pro rata."  (Id.)  According to Defendant, Plaintiff has previously redeemed other holder's debentures in full without complying with the pro rata language in the Redemption Provision.  (Nussbaum Aff. ¶¶ 12-14.)  Thus, Defendant argues that because Plaintiff redeemed another holder's debentures prior to their maturity dates, Defendant is entitled to offset Plaintiff's recovery by an amount equal to the pro rata share of Plaintiff's prior redemptions.  (Def.'s Mem. at 7.)

Conversely, Plaintiff contends that Defendant is not entitled to an offset for three reasons: (1) Defendant is

---

[3] The Redemption Provision provides,

> [t]his debenture will be redeemable at the option of [Plaintiff], in whole or in part, at any time and after proper notice.  The redemption price will be the principal amount of this Debenture plus interest accrued to the date fixed for redemption.  In the event that less than all of the Debentures of this issue are to be redeemed, redemption will be, to the extent possible, pro rata.  This Debenture will become due and payable and will cease to bear interest on the date fixed for redemption.

(See generally Debenture Certificates.)

6

estopped from asserting its rights under the Redemption Provision, (2) the language in the Redemption Provision does not compel Plaintiff to redeem Defendant's debentures, thus precluding any argument for offset, and (3) assuming *arguendo* that Defendant's interpretation of the Redemption Provision is correct, Defendant is nonetheless not entitled to an offset because Plaintiff did not redeem any member's debentures prior to their maturity date.  (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") (D.E. 26-1) at 2-3, 8-10.)

In 2007, Plaintiff sought and obtained financing from Wachovia Bank, N.A. ("Wachovia").  (Pl.'s Statement of Facts ¶ 21.)  Under the terms of the financing agreement, Plaintiff was required to obtain consent from its customers that they would not claim any offset for amounts owed to Plaintiff based on debentures issued to its customers.  (Id.; see also Pl.'s Mot. for Summ. J. Ex. C (D.E. 26-5).)  Plaintiff obtained Defendant's consent in an August 13, 2007 letter agreement ("2007 Letter Agreement").  (See Pl.'s Mot. for Summ. J. Ex. C.)  In the 2007 Letter Agreement, entered into between Plaintiff, Defendant, and Wachovia, Defendant consented to the following:

> [Defendant] also acknowledges receipt of notice of [Wachovia's] security interest in the Collateral, including all of [Plaintiff's] current and future accounts receivable; and agrees that [Defendant] will not (x) offset any indebtedness at any time owed to [Defendant] under or in connection with the Debentures against any amount now or in the future due or

> payable by [Defendant] to [Plaintiff] (a "Customer Payable") or (y) otherwise attempt to reduce the amount or delay the time of payment of any Customer Payable, whether pursuant to recoupment, defense, counterclaim, or otherwise.

(Id.)  Plaintiff argues that pursuant to the above-cited language, Defendant is now estopped from asserting that it is entitled to an offset based on the debentures it holds.

Equitable estoppel is a defense that prevents a party from raising a claim or asserting a legal position when the party's conduct contradicts that contention.  See Molloy v. City of Chattanooga, 232 S.W.2d 24, 26 (Tenn. 1950).  Under Tennessee law, the elements of equitable estoppel as related to the party estopped are:

> (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert;
> (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; [and]
> (3) Knowledge, actual or constructive of the real facts.

Roach v. Renfro, 989 S.W.2d 335, 349 (Tenn. Ct. App. 1998).  As to the party invoking equitable estoppel, the following elements must be demonstrated:

> (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question;
> (2) Reliance upon the conduct of the party estopped; and

8

>   (3) Action based thereon of such a character as to change his position prejudicially.

Id. The party invoking equitable estoppel has the burden of proving each element by a preponderance of the evidence. Webb v. Bd. of Trs. of Webb Sch., 271 S.W.2d 6, 10 (Tenn. Ct. App. 1954).

The Court finds that Plaintiff's equitable estoppel argument fails as a matter of law because Plaintiff has not met it burden of demonstrating detrimental reliance. In its motion, Plaintiff asserts that it "detrimentally relied upon [Defendant's] words and conduct in negotiating and securing the financing from Wachovia." (Pl.'s Mem. at 9.) Plaintiff, however, has failed to demonstrate how it altered its position for the *worse* by securing financing from Wachovia. In the absence of authority indicating otherwise, the Court is not convinced that the mere undertaking of a loan obligation is, by itself, a detriment. Without some evidence that Plaintiff "suffered a loss of substantial character," Plaintiff's equitable estoppel claim fails as a matter of law. Allen v. Neal, 396 S.W.2d 344, 345 (Tenn. 1965) ("In the absence of injury, it is, of course immaterial that the other elements of estoppel are present.").

Although Plaintiff has not met its burden of demonstrating equitable estoppel, the Court finds that Plaintiff has met its burden of demonstrating that Defendant waived its right to

9

assert offset.[4]  In Tennessee, waiver is a party's voluntary and intentional relinquishment of a known right.  See Collins v. Summers Hardware & Supply Co., 88 S.W.3d 192, 201 (Tenn. Ct. App. 2002); Jenkins Subway, Inc. v. Jones, 990 S.W.2d 713, 723 (Tenn. Ct. App. 1998).  In order to constitute waiver, "there must be clear, unequivocal, and decisive acts of the party of an act which shows determination not to have the benefit intended."  Collins, 88 S.W.3d at 201 (citation omitted).  As with equitable estoppel, the burden of establishing waiver rests upon the party who invokes it.  Jenkins-Subway, 990 S.W.2d at 722-23.

Although the concepts of waiver and equitable estoppel are similar, Tennessee courts recognize a distinction between the two: "A waiver is an intentional relinquishment, while the indispensable elements of an estoppel are ignorance of the party who invokes the estoppel, a representation by the party estopped which misleads, and an innocent and deleterious change of position in reliance on that representation."  Id. at 723 (citation and internal quotation marks omitted).  Simply stated, detrimental reliance is an essential element of equitable estoppel but not of waiver.

---

[4]   In its motion, Plaintiff does not directly contend that Defendant *waived* any rights under the Redemption Provision.  Equitable estoppel and waiver, however, are similar concepts.  See Jenkins Subway, Inc. v. Jones, 990 S.W.2d 713, 723 (Tenn. Ct. App. 1998) (noting that equitable estoppel is also known as an "implied waiver" or "waiver by estoppel").  The Court therefore construes Plaintiff's equitable estoppel argument to include waiver.  See Hamilton's Bogart, Inc. v. Michigan, 501 F.3d 644, 650-51 (6th Cir. 2007) (construing litigant's poorly-articulated argument to mean what the litigant intended to argue).

10

In the instant case, Defendant promised in the 2007 Letter Agreement that it would not "offset any indebtedness at any time owed to [Defendant] under or in connection with the Debentures against any amount now or in the future due or payable by [Defendant] to [Plaintiff]." (<u>See</u> Pl.'s Mot. for Summ. J. Ex. C.) The Court finds that Defendant's promise is a "clear, unequivocal, and decisive" act that manifests an intent and purpose not to assert an offset claim based on the debentures it holds. Defendant has submitted no evidence that it negotiated a modification of its waiver prior to filing the complaint in the instant lawsuit.[5] <u>See</u> <u>Moore Constr. Co. v. Clarksville Dept. of Elec.</u>, 707 S.W.2d 1, 13 (Tenn. Ct App. 1985) ("Once a party has waived the requirement with regard to a particular matter, it cannot revoke its waiver, in whole or in part, at its convenience.") (citation omitted). Because Plaintiff need not prove detrimental reliance to demonstrate waiver, Plaintiff's Motion for Summary is GRANTED as to Defendant's right to offset based on the debentures it holds. Having found that Defendant waived its right to claim offset based on the debentures it

---

[5]   Conversely, Plaintiff submitted the affidavit of Patrick J. Neiman, Plaintiff's Chief Financial Officer, who stated that (1) "[n]o agreements amending or terminating the provisions of the . . . [2007 Letter Agreement] . . . have been executed," (2) the August 2007 Letter Agreement "remains in the same force and effect as it did on the date it was executed," (3) "the financing arrangements referenced in the [August 2007 Letter Agreement] remain in the same place as they were around the time of the execution of the letter agreement with the exception that Wachovia is now a division of Wells Fargo Bank, N.A.," and (4) "[t]he change in Wachovia's ownership had no effect on the financing arrangements referenced in the [August 2007 Letter Agreement]." (Neiman Aff. (D.E. 43-1) ¶ 12.)

11

holds, the Court expresses no opinion as to the interpretation of the language in the Redemption Provision or whether Defendant has previously redeemed another member's debentures.

**(B)  Offset for interest owned in Del-Nat, LLC**

Defendant states that it invested in Del-Nat Ventures "[a]s part of its business relationship with [Plaintiff]" and that it believed "its investment [in Del-Nat Ventures] would be part and parcel of its relationship with [Plaintiff]."  (Def.'s Mem. at 10.)  Thus, Defendant contends that it is entitled to offset any amount it owes Plaintiff by (1) the amount of net profits Defendant is entitled to receive under the Del-Nat Ventures Operating Agreement (the "Operating Agreement"), and (2) the amount of sales proceeds Defendant is entitled to receive under the Operating Agreement in the event Defendant transfers its ownership interest in Del-Nat Ventures.  (Id. at 10-11.)

Under Tennessee law, "[t]here is a presumption that a corporation is a distinct legal entity, wholly separate and apart from its shareholders, officers, directors, or affiliated corporations."  Boles v. Nat'l Dev. Co., 175 S.W.3d 226, 244 (Tenn. Ct. App. 2005).  Plaintiff, a corporation, and Del-Nat Ventures, a limited liability company, are therefore legally presumed to be separate and distinct legal entities.  Under this presumption, Defendant is not entitled to offset any amounts it owes Plaintiff based upon its ownership interest in Del-Nat

12

Ventures.  In order to survive Plaintiff's Motion for Summary Judgment, Defendant must submit sufficient evidence to create a factual dispute as to whether there is some legal connection between Plaintiff and Del-Nat Ventures giving rise to a right to offset.

Defendant has not submitted any proof that Plaintiff and Del-Nat Ventures are legally connected in such a way that gives rise to a right to offset.  To the contrary, Defendant concedes that the Del-Nat Ventures Operating Agreement contains no language requiring Plaintiff to purchase Defendant's interest in Del-Nat Ventures, whether in cash or in the form of an offset of amounts Defendant owes Plaintiff.  (Def.'s Resp. to Pl.'s Statement of Facts ¶ 20; see also generally Pl.'s Mot. for Summ. J. Ex. B (D.E. 26-4).)  Plaintiff's Motion for Summary Judgment is therefore GRANTED as it relates to Defendant's right to offset based on its ownership interest in Del-Nat Ventures.

**(C)  Breach of Contract**

Under Tennessee law, the essential elements of a breach of contract claim "include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract." C & W Asset Acquisition, LLC v. Oggs, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007) (citations omitted).  Considering that Defendant's counsel stated at the telephonic hearing that

13

Defendant does not dispute the existence of certain purchase orders or that Defendant has failed to pay the balance due under said purchase orders, Plaintiff has established the first and second elements of its breach of contract claim. Furthermore, because Defendant has not shown that there is a dispute for trial with regard to whether its breach caused damages, Plaintiff has established the final element of its breach of contract claim.

There is a factual dispute, however, as to the amount of damages caused by the breach. (See Nussbaum Aff. ¶ 5; Nieman Aff. ¶ 13.) Federal Rule of Civil Procedure 56(d)(2) provides that "[a]n interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages." Fed. R. Civ. P. 56(d)(2). As such, the Court GRANTS Plaintiff's Motion for Summary Judgment as to liability but not on the calculation of damages.

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is GRANTED as to Defendant's claims of offset and as to liability on Plaintiff's breach of contract claim. Plaintiff's Motion for Summary Judgment is DENIED on the issue of damages.

**IT IS SO ORDERED,** this 26th day of May, 2010.

/s/ JON PHIPPS McCALLA
CHIEF UNITED STATES DISTRICT JUDGE

14